Employers Mutual Casualty Company, Appellant
v. Supervisors of Lewis Township, Appellees.

420

Argued April 5, 1984, before Judges WILLIAMS, JR., MACPHAIL and DOYLE, sitting as a panel of three.

*James W. Hennessey, Sherr, Moses & Zuckerman,* P.C., for appellant.

*Richard A. Gahr, Kieser & Gahr,* for appellees.

OPINION BY JUDGE MACPHAIL, June 29, 1984:

Employers Mutual Casualty Company (Company) appeals here from a decision of the Court of Common Pleas of Lycoming County which ordered the Company to provide insurance coverage pursuant to its contracts of insurance with Lewis Township (Township) and Township employees, for surcharges imposed and judgments entered against former Township Supervisors.

The trial court found that the surcharges in question were a result of actions taken in 1978 by former Township Supervisors Donald Chute, Edward Deljanovan and James Remick, and in 1979 by Chute and Deljanovan acting as Township Supervisors. Judgment was entered on July 2, 1979, in the amount of $801.37 for the surcharges covering 1978, and on July 1, 1981, in the amount of $10,833.66 for the surcharges covering 1979.

The Company, through its agent, had issued various policies of insurance to the Township, with coverage for "legal liability and loss reimbursements," which were in effect throughout the time during which the actions occurred which resulted in the surcharges. Each policy provided, *inter alia,* that the Company would pay on behalf of the insured, loss which the insured became legally obligated to pay because of a "wrongful act" during the policy period. A "wrongful act" was defined as any and all "actual or alleged errors, mis-statement or misleading statement, act or omission or neglect or breach of duty by the insured . . . in the discharge of municipal duties. . . ." The policies also provided that "[t]erms of the policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes."

In the instant case, the actions of the former Supervisors fall within the policy definition of "wrongful acts." The Company does not dispute that the actions fall within that definition, but rather argues that coverage of surcharges is either statutorily precluded or in contravention of public policy.

The Company argues here as it did before the trial court that Section 702(XIII) of The Second Class Township Code (Code)[1] is controlling. Section 702

---

[1] Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §65713.

(XIII) of the Code provides in pertinent part that the Township is authorized

> ... to make contracts with any insurance company, so authorized, insuring any public liability of the township, including insurance on every township officer, official, and employe for liability arising from errors and omissions in the performance of their duties in the course of their employment, *except that liability of elected or appointed officials or officers for surcharge in accordance with law shall not be affected hereby.* ... (Emphasis added.)

Section 702(XIII) of the Code was subsequently repealed by Section 802(b) of the Political Subdivision Tort Claims Act (Act)[2] insofar as Section 702 (XIII) of the Code is inconsistent with the Act.

Section 701 of the Act[3] provided that: "A political subdivision shall have the authority to purchase insurance on itself or its employees for *any* liability arising from the performance of their duties within the scope of their employment." (Emphasis added.)[4] The Company argues that because the Act is silent as to surcharges, Section 702(XIII) of the Code is not inconsistent with the Act. We cannot agree.

Section 702(XIII) of the Code authorizes expenditures from township funds for various kinds of insurance including workmen's compensation, fire protection, and life, health, medical and hospitalization

---

[2] Act of November 26, 1978, P.L. 1399, 53 P.S. §5311.802(b), repealed by Section 333 of the JARA Continuation Act of 1980, Act of October 5, 1980, P.L. 693, 42 P.S. §20043.

[3] 53 P.S. §5311.701, repealed by Section 333 of the JARA Continuation Act of 1980. A similar provision is now found in Section 8564(a) of the Judicial Code, 42 Pa. C. S. §8564(a).

[4] Section 8564(a) of the Judicial Code similarly provides that a local agency may insure its employees for *any* liability "arising from the performance of their duties within the scope of their employment."

insurance as well as liability insurance; Section 701 of the Act concerns liability insurance only. The sole portion of Section 702(XIII) of the Code which is potentially inconsistent with Section 701 of the Act is the language which we have quoted above.

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, *unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such provision shall prevail.* (Emphasis added.)

Section 1933 of the Statutory Construction Act of 1972, 1 Pa. C. S. §1933. We find that authorization to insure against *any* liability, without exception, is irreconcilable with the provision of Section 702(XIII) of the Code excepting coverage for liability for surcharges. Of course, Section 701 of the Act was enacted subsequent to Section 702(XIII) of the Code. Finally, we find that continuation in Section 8654(a) of the Judicial Code, of the authorization to insure against *any* liability indicates the intention of the legislature that this general provision should prevail.

We hold that the exception of liability for surcharges contained in Section 702(XIII) of the Code is inconsistent with Section 701 of the Act and was repealed by Section 802(b) of the Act. The authority to purchase insurance to cover *any* liability includes authority to insure against loss because of surcharges where the liability arose from the employee's performance of duties within the scope of employment. Therefore, the terms of the policy are not in conflict

with the statutes and the surcharges in the instant case are covered by the contracts of insurance.

The Company next argues that recovery on its contracts is precluded by public policy considerations. It is contended that the factual circumstances and consequences here are similar to those in *Central Dauphin School District v. American Casualty Co.*, 493 Pa. 254, 426 A.2d 94 (1981), where our Supreme Court held that public policy would not permit a school district to recover from its liability insurance carrier, funds that the school district had collected under a taxing resolution subsequently determined to be invalid by a trial court. The majority of that Court held that, ''Because this Commonwealth's public policy does not permit a school district to make unlawful taxation just as revenue-productive as lawful taxation, it must be concluded that a political subdivision's return of tax monies to its taxpayers collected by an unlawful tax is uninsurable.'' *Id.* at 260, 426 A.2d at 97. The Company argues in the instant case that if we permit recovery for acts of township officials that result in surcharges, the public policy of providing surcharges as a restraint on the actions of the municipal officials will be undermined because such insured officials will then be free to act in any arbitrary, capricious, fraudulent or corrupt way they wish without fear of personal financial responsibility.

We are of the opinion that there is a vast difference between a tax which is constitutionally or statutorily infirm and wrongful acts of municipal officers. The public policy which impacts upon the former is far different from that which affects the latter. Our Supreme Court again in *Central Dauphin*, 493 Pa. at 260, 426 A.2d at 97, said, "The validity of tax measures is *not* determined by the good or bad faith or negligence or lack of negligence of the governmental unit imposing the tax." (Emphasis added.) By con-

trast, the wrongful acts insured against here are the result of specific misconduct on the part of municipal officials. Liability insurance coverage for municipal officials is for the benefit of the municipality to protect *it* against financial loss caused by the wrongful acts of its officials who may or may not be financially able to personally compensate for losses they have caused. The criminal law as well as the election ballot box are sufficient deterrents to assure that the conduct of public officials does not get out of hand. We conclude that public policy does not intervene to effectively bar insurance coverage for the Supervisors' actions in the instant case.

Accordingly, we affirm the order of the court of common pleas.

### ORDER

The order of the Court of Common Pleas of Lycoming County dated January 28, 1983, No. 81-2776, is hereby affirmed.